1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF OREGON

11  SHERRY PARRISH,                 )
                                    )
12                Plaintiff,        )
                                    )    No.  CV-08-969-HU
13       v.                         )
                                    )
14  MICHAEL J. ASTRUE,              )
    Commissioner of Social          )
15  Security,                       )    FINDINGS & RECOMMENDATION
                                    )
16                Defendant.        )
                                    )
17  Tim Wilborn
    WILBORN LAW OFFICES
18  P.O. Box 2768
    Oregon City, Oregon 97045
19
20       Attorney for Plaintiff

    Dwight C. Holton
21  UNITED STATES ATTORNEY
    District of Oregon
22  Adrian L. Brown
    ASSISTANT UNITED STATES ATTORNEY
23  1000 S.W. Third Avenue, Suite 600
    Portland, Oregon 97204-2902
24
    L. Jamala Edwards
25  SPECIAL ASSISTANT UNITED STATES ATTORNEY
    Social Security Administration
26  Office of the General Counsel
    701 Fifth Avenue, Suite 2900 M/S 901
27  Seattle, Washington 98104-7075

28       Attorneys for Defendant


    1 - FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

Plaintiff Sherry Parrish brought this action for judicial review of the Commissioner's final decision to deny supplemental security income (SSI). Presently, plaintiff's counsel seeks an award of attorney's fees pursuant to 42 U.S.C. § 406(b). I recommend that the motion be granted and that plaintiff's counsel be awarded $9,059.89, before deducting fees previously awarded under the Equal Access to Justice Act (EAJA).

PROCEDURAL HISTORY

Plaintiff filed for Supplemental Security Income on October 10, 2003. After denials at the administrative level, she sought judicial review by this Court. That case was assigned to Judge Hogan, who reversed the final order of the Administrative Law Judge (ALJ), and remanded the matter to the ALJ for a de novo hearing. Parrish v. Commissioner, No. CV-06-685-HO (D. Or. Mar. 12, 2007) (dkt #24). Plaintiff's counsel was awarded $5,000 in EAJA fees. (dkt #29).

Following a second administrative-level denial, plaintiff again sought judicial review by this Court. Plaintiff contended that the ALJ erred in several respects, including improperly rejecting the opinions of plaintiff's examining psychologists, improperly rejecting plaintiff's testimony, and failing to address third-party lay witness testimony. In response to plaintiff's opening memorandum, the Commissioner moved to remand the case to the ALJ for further proceedings. The Commissioner conceded that the ALJ erred in evaluating the record and that the ALJ's errors compelled reversal of the ALJ's decision. Deft's Mem. in Sup. of Remand at pp. 6, 8.

1    The Commissioner argued that the remand should be for
2  additional evidence because there were "unresolved issues," and
3  because the record did not clearly require a finding of disability.

4    Plaintiff argued that a remand for a determination of benefits
5  was appropriate because when certain improperly rejected evidence
6  was considered, it mandated a finding of disability.

7    In a November 9, 2009 Findings and Recommendation, I agreed
8  with plaintiff and recommended that the case be remanded for a
9  determination of benefits.  On January 4, 2010, Judge Mosman
10 adopted my Findings and Recommendation, and a Judgment was issued
11 on January 13, 2010.

12   On April 14, 2010, plaintiff filed an unopposed motion for an
13 award of fees under EAJA.  In an April 23, 2010 Order, Judge Mosman
14 granted the EAJA fee application, and awarded plaintiff's counsel
15 $6,575 in fees for plaintiff's counsel's work in the instant case,
16 No. CV-08-969-HU.

17   Plaintiff's counsel now seeks an award of $9,059.89 pursuant
18 to section 406(b), an amount plaintiff's counsel represents is
19 twenty-five percent of the award of benefits received by
20 plaintiff.[1]  Attchmt 1 to Pltf's Mem.

21                          STANDARDS

22   In evaluating a fee request under section 406(b), the court
23 must look first to the fee agreement, then test its reasonableness.

24

25   [1] Attorney's fees in Social Security cases may be awarded
26 under both EAJA and section 406(b), but the EAJA award offsets
   the award under section 406(b).  Gisbrecht v. Barnhart, 535 U.S.
27 789, 796 (2002).  EAJA fees are determined by multiplying an
   hourly rate, capped by statute at $125, by the number of hours
28 spent.  Id.; 28 U.S.C. § 2412(d)(2)(A).

3 - FINDINGS & RECOMMENDATION

1   Crawford v. Astrue, 586 F.3d 1142, 1149 (9th Cir. 2009) (en banc)
2   (citing Gisbrecht, 535 U.S. at 808); see also Dunnigan v. Astrue,
3   No. CV-07-1645, 2009 WL 6067058, at *9 (D. Or. Dec. 23, 2009)
4   (noting that section 406(b) analysis begins with the contingent fee
5   agreement then proceeds with an evaluation of the agreement's
6   reasonableness), adopted by Judge Mosman, 2010 WL 1029809 (D. Or.
7   Mar. 17, 2010).

8        A twenty-five percent fee is not automatic as seen by
9   Gisbrecht's requirement of an independent reasonableness analysis
10  and its reference to the twenty-five percent amount as a
11  "boundary."   Gisbrecht, 535 U.S. at 807.   Because the Social
12  Security Administration has no direct interest in how much of the
13  award goes to counsel and how much to the claimant, the district
14  court has an affirmative duty to address the question of whether
15  the contingent fee should be reduced. Crawford, 586 F.3d at 1149;
16  see also Gisbrecht, 535 U.S. at 807 (court must review contingent
17  fee agreements "to assure that they yield reasonable results in
18  particular cases.").

19       The determination of the fee agreement's reasonableness and
20  whether any reduction is appropriate, is accomplished by examining
21  the factors identified in Gisbrecht in light of the circumstances
22  in the particular case.  These factors include the character of the
23  representation, the results the representative achieved, any delay
24  attributable to the attorney seeking the fee, and whether the
25  benefits obtained were "not in proportion to the time spent on the
26  case." Crawford, 586 F.3d at 1141.  Additionally, as Dunnigan
27  explained, the trial courts in the Ninth Circuit must assess the
28  risk to the requested attorney of having taken the specific case

4 - FINDINGS & RECOMMENDATION

1  under review.  <u>Dunnigan</u>, 2009 WL 6067058, at *9 (citing <u>Crawford</u>,
2  586 F.3d at 1152-53).

3                              DISCUSSION

4  I.  The Fee Agreement

5       Plaintiff's counsel and plaintiff were parties to a contingent
6  fee agreement in which they agreed that the attorney's fee for work
7  in federal court would be the greater of (1) twenty-five percent of
8  any past due benefits received, or (2) any EAJA fee award obtained.
9  Attchmt  1  to  Pltf's  Mem.   The  terms  of  the  contingency  fee
10 agreement are within the statutory limits.

11      Under <u>Dunnigan</u>, the next step is to confirm that the fee
12 sought  does  not  exceed  section  406(b)'s  twenty-five  percent
13 ceiling.   The  July 1,  2010 benefit  award  letter  submitted  by
14 plaintiff's counsel shows that plaintiff was awarded $38,261.57,
15 twenty-five percent of which is $9,565.39.  <u>Id.</u>  The fee sought by
16 plaintiff's counsel is actually slightly less than this amount.
17 Thus, the contingent fee percentage specified in the fee agreement
18 is within the statutory ceiling, and the fee sought does not exceed
19 ceiling.

20 II.  Reasonableness of the Fee Sought

21      A  reduction  of  a  twenty-five  percent  contingency  fee  is
22 appropriate if the character of the representation is substandard.
23 <u>Gisbrecht</u>, 535 U.S. at 808.  Plaintiff's counsel's representation
24 in this case was not substandard and no downward adjustment on this
25 basis is warranted.  Similarly, no downward adjustment is justified
26 based on any unreasonable delay.  <u>Id.</u> (reduction in fee appropriate
27 if requesting attorney inappropriately caused delay in proceedings
28 so  that  attorney  "will  not  profit  from  the  accumulation  of

5 - FINDINGS & RECOMMENDATION

benefits" which the case is pending).  Here, plaintiff's counsel

sought one extension of time of forty-five days, to file an opening

memorandum.  Defendant did not oppose the motion.  No evidence in

the record suggests that the extension request was intended to

delay the proceedings in the case.  Dunnigan, 2009 WL 6067058, at

*12 (no reduction based on this factor when attorney sought and was

granted two extensions of time).

As for the results achieved, this Court ordered remand for an

award of benefits, the remedy sought by plaintiff.  In doing so,

this Court rejected defendant's argument that remand for additional

proceedings was required.

As noted in Dunnigan, however, the circumstances under which

the result is achieved are important to the assessment of this

factor.  Id. at *11; see also Lind v. Astrue, No. SACV 03-01499 AN,

2009 WL 499070, at *4 (C.D. Cal. Feb. 25, 2009) (inquiry focuses on

whether counsel's efforts made a "meaningful and material

contribution towards the result achieved").

Here, plaintiff's counsel filed a twenty-nine page opening

memorandum, raising several alleged errors by the ALJ at three

different steps of the disability sequential analysis.  While some

of plaintiff's memorandum is boilerplate recitation of the standard

of review and the sequential analysis, more than fifteen pages is

devoted to a detailed and thorough discussion of the substantive

arguments and facts particular to the case.

In response, defendant conceded that the ALJ had erred, but it

was only after plaintiff filed this opening memorandum raising a

number of alleged errors.  Additionally, although defendant

generally responded that the ALJ erred in evaluating plaintiff's

6 - FINDINGS & RECOMMENDATION

application, defendant did not acknowledge any specific errors nor concede at which step the ALJ had erred.   Moreover, defendant contested the appropriateness of a remand for a determination of benefits.   Defendant's argument for a remand for additional proceedings required plaintiff to file a substantive reply memorandum.   While some parts of the reply memorandum repeated arguments plaintiff had raised initially in the opening memorandum, there was still significant discussion of the evidence and the law regarding the appropriateness of additional proceedings versus an award of benefits.

In contrast to some remand cases where the parties stipulate early in the case to the exact nature of the error and the remedy required, defendant in this case did not agree to the appropriateness of a remand at all until after plaintiff had filed the opening memorandum, and the nature of the remand was strongly contested.   Looking at the circumstances in this case, plaintiff's counsel achieved an excellent result for his client.

Next, the court evaluates the relationship between the benefits obtained and the time spent on the case.   Crawford, 586 F.3d at 1151 (court may reduce fee when benefits obtained were "not in proportion to the time spent on the case.").[2]   Plaintiff's counsel argues that his fee is reasonable when considered in the context of customary billing rates, the risk of non-payment, and other factors.   He starts this discussion by pointing to the 2007

---

[2]   Plaintiff's counsel refers to this factor as the "proportionality of fee requested to time expended," Pltf's Mem. at p. 3, but Crawford and Gisbrecht make clear that it is a comparison of benefits obtained to the time expended, not a comparison of the fee requested to the time expended.

7 - FINDINGS & RECOMMENDATION

Oregon State Bar Economic Survey, used by judges in this Court as a benchmark for determining reasonable hourly rates for attorney fee awards, and specifically by pointing to the $244 average hourly billing rate for all Portland survey respondents.    OSB 2007 Economic Survey at p. 27.

Plaintiff's counsel then notes that in social security court cases, there is only a 33.52% chance of winning benefits for the claimant.  He argues that to make up for the risk of non-payment, a contingency multiplier of 2.98 (a figure he achieved by dividing 100% by 33.52%) is warranted.  Applying this to the average $244 hourly rate from the OSB 2007 Economic Survey, plaintiff's counsel concludes that $727.12 is the hourly rate, averaged across all cases in which section 406(b) cases are awarded, which would properly compensate plaintiff's counsel for the risk of non-payment due to contingency.  He goes on to argue that in this case, the total amount requested ($9,059.89) divided by the number of hours plaintiff's counsel spent on the case (38.3 as reflected in "Schedule A" appended to plaintiff's motion for EAJA fees; docket #29), yields an hourly rate of $236.55, well below the range he contends is justified.  He contends that the hourly rate calculated above and requested here is reasonable because it is lower than the non-contingent average hourly rate charged by attorneys in the Portland area.

The problem with plaintiff's counsel's argument, in addition to the lack of support for the 33.52% "chance of winning" percentage which is the foundation for his calculations, and which I discuss below, is that the argument is essentially based on a lodestar approach, constructing a proposed reasonable hourly rate

8 - FINDINGS & RECOMMENDATION

and then contending that an upward adjustment is required to compensate for the nature of contingency cases. But, Gisbrecht and Crawford instruct that the court must start with the contingency fee agreement and then test it for reasonableness by applying the appropriate factors. Additionally, plaintiff's counsel's argument here, based on social security cases generally and their inherent risk, fails to comply with the Crawford court's direction that the risk to be considered is that of the "specific case at issue" and not the lawyer's "overall success rate" or the success rate generally for social security cases. Plaintiff's argument runs afoul of Crawford's mandate to evaluate the chances of success in this case.

    Additionally, the basis for plaintiff's counsel's 33.52% figure is not supported in the record. He relies on an unauthenticated one-page document identified as the April 2008 NOSSCR Social Security Forum, which is appended as Attachment 2 to his memorandum. That document shows, for fiscal year 2007 only, that for initial claims that reach federal courts, 5% are allowed, 8% are dismissed, 41% are denied, and 46% are remanded. Plaintiff's counsel states that the 33.52% figure is based on the 5% of the cases allowed at the federal court level and "the cases in which the courts order remands for further proceedings, [and] then the claimants establish entitlement to benefits during remand proceedings." Pltf's Mem. at p. 4. He then notes that 46% of the cases are remanded by the federal courts for further proceedings, and claimants win 62% of the time at ALJ hearings. Id. "This adds up to 33.52% of all court cases ultimately resulting in awards of benefits." Id.

1   The problem, however, is that the document does not support
2   the conclusion that 62% of the remanded cases result in an award of
3   benefits.   Rather, it shows only that as cases progress upward
4   through the administrative level and then to the federal court,
5   ALJs awarded benefits 62% of the time.   Id.   This does not show
6   that in a case where the ALJ previously rejected the claim, and
7   then the district court remanded the case, the ALJ award rate upon
8   remand is 62%.

9   As noted, the time records submitted in support of the EAJA
10  fee application shows that counsel expended 38.3 hours on this
11  case, meaning case number CV-08-969-HU.   Counsel spent 21 hours
12  reviewing the file, the ALJ's decision, the relatively short
13  administrative record, and writing the opening memorandum.   An
14  additional 5 hours were spent on the reply memorandum.

15  In Harden v. Commissioner, 497 F. Supp. 2d 1214, 1215 (D. Or.
16  2007), Judge Mosman observed that "[t]here is some consensus among
17  the district courts that 20-40 hours is a reasonable amount of time
18  to spend on a Social Security case that does not present particular
19  difficulty."   He stated that absent unusual circumstances or
20  complexity, "this range provides an accurate framework for
21  measuring whether the amount of time counsel spent is reasonable."
22  Id. at 1216.

23  As noted above, plaintiff's counsel obtained a favorable
24  result for his client.   However, while this case required more
25  effort than some remands (for example, where the parties agreed to
26  remand for additional evidence), and while the briefing was of good
27  quality, none of the arguments raised was exceptionally complex or
28  raised a novel legal issue.   Rather, the arguments presented were

typical of those raised in many social security appeals: improper rejection of examining medical practitioners, improper rejection of plaintiff's testimony, and a failure to address third-party lay witness testimony.  Thus, the number of hours spent, approaching the upper end of the 20-40 hour range for cases without unusual difficulty, seems slightly high.

Finally, as to risk, plaintiff's counsel states that in his opinion, this case was at least an average risk.  But, he primarily addresses the risk of non-payment generally in appeals to federal court.  He does not address the specific issue of the risk of taking the specific case at issue.

As indicated above, plaintiff's counsel seeks an award of $9,059.89, an amount slightly less than twenty-five percent of the past-due benefits awarded to plaintiff.  Relying on the analysis articulated by Gisbrecht and Crawford, I have determined that a reduction is unwarranted when consideration is given to the entire body of work by plaintiff's counsel, under all but one relevant factor: the benefit obtained compared to the time spent. However, it is important to note that under that factor, I indicated that the number of hours billed seemed slightly high, not excessively high.

While the lodestar method of fee calculations is not the starting point for fee awards in section 406(b) cases, the court may consider the relevant billing records and the lodestar calculation in assessing the reasonableness of the resulting fee. Crawford, 586 F.3d at 1151.  The total fee requested here, divided by the number of hours, produces an hourly rate of $236.55, a figure below the hourly average billed by Portland attorneys in

11 - FINDINGS & RECOMMENDATION

2007. Given that this effective hourly rate is already below the average, based on the character of the representation, the results achieved, the lack of unreasonable delay, and the average risk involved, no reduction is warranted.

As plaintiff's counsel notes, in his memorandum, the previously awarded EAJA award in the instant case, in the amount of $6,575, is deducted from the section 406(b) award. Although not addressed by counsel, I recommend deducting not only the $6,575 EAJA award in this case, but also the $5,000 previously awarded by Judge Hogan for the work performed by plaintiff's counsel in the first appeal. Kopulos v. Barnhart, 318 F. Supp. 2d 657, 667-68 (N.D. Ill. 2004) ("all EAJA awards granted for work performed on a claim must off-set the SSA fees awarded for work performed on the same claim."); see also Russ v. Astrue, No. 3:07-cv-1213-J-MCR, 2010 WL 5341928, at *2 (M.D. Fla. Dec. 21, 2010) (subtracting two prior EAJA awards from section 406(b) fees). Thus, while I recommend that plaintiff's motion be granted, the total of the two EAJA awards is greater than the sum awarded under section 406(b), resulting in no new monies being awarded to plaintiff's counsel for work performed on plaintiff's claim.

                              CONCLUSION

Plaintiff's motion for an award of $9,059.89 in attorney's fees under section 406(b), [33], should be granted, but the reduction for two prior EAJA awards results in no money being owed to plaintiff's counsel beyond those two EAJA awards.

                           SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due March 22, 2010. If no

12 - FINDINGS & RECOMMENDATION

objections are filed, then the Findings and Recommendation will go
under advisement on that date.

    If objections are filed, then a response is due April 8, 2010.
When the response is due or filed, whichever date is earlier, the
Findings and Recommendation will go under advisement.

    IT IS SO ORDERED.

                Dated this 3rd  day of March, 2011.


                        /s/ Dennis J. Hubel

                        _____
                        Dennis James Hubel
                        United States Magistrate Judge

13 - FINDINGS & RECOMMENDATION